**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-1565

———————————

MONA FIORENTINI,
                                        Appellant
v.

WILLIAM PENN SCHOOL DISTRICT

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-13-cv-03689)
Honorable J. William Ditter, Jr., District Judge

———————————

Submitted under Third Circuit LAR 34.1(a)
December 9, 2016

BEFORE:  FISHER, KRAUSE, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion Filed:  December 16, 2016)

———————————

OPINION*

———————————

GREENBERG, <u>Circuit</u> <u>Judge</u>.

———————————

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

## I. INTRODUCTION

Plaintiff Mona Fiorentini appeals from the District Court's order granting summary judgment to defendant William Penn School District on her claims under the Age Discrimination in Employment Act ("ADEA"), Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Pennsylvania Human Relations Act ("PHRA"). Fiorentini asserts that she faced discriminatory adverse employment actions by the School District after she was diagnosed with breast cancer and subsequently took medical leaves and a sabbatical from her employment with the School District.

For the reasons that follow, we hold that the District Court properly granted summary judgment to the School District by order entered on February 10, 2016, and therefore we will affirm that order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual History

The School District hired Fiorentini as a literacy coach and reading specialist in 2001 to work at the Park Lane Elementary School. This position entailed working primarily with teachers and other staff by providing instructional support. Though Fiorentini was certified as a reading specialist she did not possess a Pennsylvania elementary teaching certificate during her employment with the School District. Park Lane's principal, Dujana Ambrose, supervised Fiorentini from 2006 to 2010, and Ambrose and Fiorentini, at least at the outset, seemed to have had an amicable

2

relationship inasmuch as Fiorentini testified that she had no issues with Ambrose prior to September 2009.

Beginning in 2009, the School District experienced ongoing issues with funding. As a result, the teachers' union at Park Lane met with its members several times to discuss the possibility of layoffs. In the spring of 2009, an officer of the teachers' union met with Fiorentini to discuss the possibility that she might be laid off because she was not certified as a teacher in Pennsylvania and only had a reading specialist certification.

In September 2009, Fiorentini informed Ambrose of her need to have a biopsy to test for breast cancer. Fiorentini testified that after she shared this information with Ambrose, she was treated as if she was a "leper" because she was prevented from making a presentation at a staff meeting, was accused of using incorrect preparation materials for her writing program, was kept from attending certain meetings, and was prevented from meeting with Ambrose. She also testified that Ambrose yelled at her about impending deadlines when she told Ambrose that she needed time off for the biopsy.

Fiorentini was diagnosed with breast cancer in the fall of 2009. Sometime after Fiorentini informed Ambrose of this diagnosis, Ambrose told Fiorentini that the description of her position would be changed.[1] Fiorentini maintains that her job was changed from exclusively functioning as a literacy coach to being a literacy

---

[1] There is a dispute as to when Ambrose changed Fiorentini's job description — Fiorentini seems to maintain that it occurred within two weeks of her biopsy, while Ambrose testified that it occurred in January 2010, nearly four months later.

3

coach/reading specialist.[2] Her responsibilities also changed from working with kindergarten through sixth grade classes to working with third through sixth grade classes. Ambrose testified that she had reassigned all nonclassroom teachers to new responsibilities at the same time as Fiorentini in order to support students in testing grades — including the third through sixth grade students — for upcoming state standardized tests. Ambrose maintains that she followed this protocol every year. Ambrose assigned an employee ten years younger than Fiorentini to work with the non-testing grades, kindergarten through second grade. But Fiorentini's salary and her job title in her personnel record were not changed as a result of her reassignment.

Fiorentini viewed her new position as a "demotion" because she maintains that a literacy coach/reading specialist position required fewer qualifications than a literacy coach position and she was working with fewer students than previously. Fiorentini also testified that Ambrose told her that she was being reassigned due to her health, although Ambrose denies that allegation.

After Fiorentini received her breast cancer diagnosis, she required surgery and time off to recover at home. The School District approved a series of medical leaves and a sabbatical for Fiorentini beginning in February 2010 through April 2011. In June 2010, while Fiorentini was on her sabbatical, the School District underwent a reorganization under which all reading specialist and literacy coach positions were scheduled to be cut due to funding issues. The School District created an instructional specialist position in

---

[2] There is an inconsistency in the record between Fiorentini's initial job title in 2001 and the change in her job title in the 2009-10 school years, but this distinction does not impact our analysis.

an attempt to place some employees who were affected by the reorganization into new positions. Fiorentini testified that she did not apply for this position because she was told that she was not qualified for it. All new hires for the instructional specialist position had Pennsylvania teaching certificates and ranged in age from 38 to 66 years. Fiorentini was 57 years old at the time.

On November 9, 2010, Fiorentini received a letter from the School District informing her that her employment would be suspended at the end of her medical sabbatical period. The letter explained that all of the available positions after the restructuring required prior teaching experience under a Pennsylvania teaching certification and Fiorentini did not have this requisite experience. Fiorentini challenged the suspension by informing the School District that she had worked in a private school for a year, but she was told that this experience would not count toward a position with the School District because it was not conducted under a Pennsylvania teaching certification. Nonetheless, after Fiorentini filed a grievance, the School District decided not to furlough Fiorentini in February 2011 and, instead, decided to reevaluate the situation once Fiorentini was cleared to return from her medical sabbatical.

In May 2011, Fiorentini returned to work for the School District at a different school as an instructional specialist. However, after the completion of that school year, the School District again reorganized and eliminated the instructional specialist position. It, however, created a school facilitator position, which required a Pennsylvania teaching certificate as well as several years of teaching experience. The candidates eventually hired for this position were 38 to 66 years old. In August 2011, Fiorentini's furlough

5

with the School District was confirmed because her reading specialist certification was insufficient for any available position.

B. Procedural History

Fiorentini sued the School District claiming violations of the ADEA, FMLA, ADA, and PHRA.[3] The School District moved for summary judgment on all of Fiorentini's claims and the District Court granted this motion in a comprehensive opinion and order entered February 10, 2016. In granting summary judgment on Fiorentini's ADEA claim, the Court found that the only action of the School District that constituted an adverse employment action was its furlough of Fiorentini in 2011 but that the School District did not take this action in circumstances giving rise to an inference that it took the action because it was engaging in unlawful discrimination. The Court also found that Fiorentini could not show that the School District's legitimate non-discriminatory reason for the furlough was a pretext for age discrimination.

In granting summary judgment for the School District on Fiorentini's FMLA retaliation claim based on her reassignment, the Court noted that she was reassigned before she invoked the FMLA and took medical leave. However, when the Court ultimately granted summary judgment it did so on the ground that it already had found

_____

[3] Fiorentini does not rely on the PHRA on appeal but this circumstance does not matter because the PHRA claims are evaluated under the same standards as her ADEA and ADA claims and inasmuch as her federal law claims fail so must her state law claims. See Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 509 n.2 (3d Cir. 2004); Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002).

6

that the reassignment was not an adverse employment action.[4]

Finally, the Court granted summary judgment for the School District on Fiorentini's ADA claim because it found that she was not a "qualified individual" for work with the District when she was furloughed and because she did not present evidence that her medical condition was a "determinative factor" in the decision to furlough her.

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291 because the District Court's February 10, 2016 order constituted a final order.

We exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014), cert. denied, 135 S.Ct. 1738 (2015). Therefore, our standard of review is identical to that of the District Court. See Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). Under this standard, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). However, a mere "scintilla of evidence" does not create a genuine issue of fact. Id. at 252, 106 S.Ct. at 2512. "The

---

[4] The District Court also granted summary judgment for the School District on Fiorentini's FMLA interference claim but Fiorentini has not appealed from that disposition.

7

non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted).

## IV.  DISCUSSION

### A.  ADEA

To state a claim for age discrimination under the ADEA, a plaintiff must show that she (1) is 40 years of age or older; (2) was qualified for the position in question; (3) was subject to an adverse employment action despite being qualified; and (4) was subject to the adverse action under circumstances that raise an inference of discrimination.  The inference may be drawn from a demonstration that similarly situated employees outside of the protected class were not similarly treated.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003).  If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to show that it had a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824-25 (1973).  If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason for the decision is pretextual.  Id.  A plaintiff must prove that age was the "but-for" cause of the employer's adverse decision to prevail on an age discrimination claim.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S.Ct. 2343, 2351 (2009).

Fiorentini argues that the District Court erred in granting summary judgment on her ADEA claim because she established a prima facie case of age discrimination and

8

produced sufficient evidence of pretext. The District Court found that of her claims only her furlough could be construed as an adverse employment action and that because the furlough did not occur in circumstances giving rise to an inference of discrimination, Fiorentini failed to establish a prima facie case of age discrimination.

1. Prima Facie Case: Adverse Employment Action

Fiorentini maintains that she suffered two adverse employment actions: first, that she was reassigned to working with the testing grades after her cancer diagnosis and second, that she was furloughed. The School District argues that her reassignment did not constitute an adverse employment action but does not contest that the furlough was an adverse action.

"[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (internal citation and quotation marks omitted). Actions like lateral transfers or changes of title generally have not been found to constitute adverse employment actions in the absence of evidence that there has been a material change in an employee's working conditions. See Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (holding that there had not been an adverse employment action against a teacher who was reassigned from teaching a special education junior high school class to a mainstream high school class where there was no evidence that the change could "constitute a setback to the plaintiff's career"); Flaherty v. Gas Research Inst., 31 F.3d 451, 457 (7th Cir. 1994) (finding no adverse employment action when an employee was transferred without a change of salary or benefits although

9

his title and supervisor changed because his "perception that a lateral transfer would be personally humiliating [was] insufficient, absent other evidence, to establish a materially adverse employment action"); Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994) (finding that a plaintiff's reassignment without "diminution in her title, salary, or benefits" did not constitute an adverse employment action although she became responsible for "fewer secretarial duties" and new "more stressful" job duties because these changes caused "no materially significant disadvantage" to her).

Fiorentini maintains that she was reassigned to a less desirable position when she was assigned to work with grades three through six rather than grades kindergarten through six. However, the reassignment did not change her title, salary, or benefits. Furthermore, there is no evidence beyond Fiorentini's own subjective testimony that the shift in responsibilities changed the nature of her job. In this regard her subjective belief that her reassignment was a "demotion" is insufficient to create a genuine issue of material fact on this issue.[5] See Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir.

---

[5] Fiorentini relies on her educational expert's opinion to argue that the reassignment was an adverse employment action, but, as the District Court correctly pointed out, even though her expert stated that her reassignment "can be interpreted as a demotion" he did so without explaining the basis for the interpretation. We are satisfied that the expert's statement is insufficient to create a genuine question of material fact on this issue. See App. at 11. She also cites several cases to support her contention with respect to the reassignment but they are either irrelevant or not factually analogous to the situation at issue here. See Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 113, 115 (3d Cir. 1996) (reversing a grant of summary judgment for an employer on a Title VII discrimination claim where it was undisputed for the purpose of summary judgment that the employee had made out a prima facie case when he was transferred involuntarily after being investigated for misconduct and was not transferred back after the investigation was dropped); Torre v. Casio, Inc., 42 F.3d 825, 827, 831-32 (3d Cir. 1994) (finding that

10

2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action."). Thus, the District Court appropriately found that her reassignment did not constitute an adverse employment action.

2. Prima Facie Case: Inference of Discrimination

The District Court continued its analysis to the fourth step of Fiorentini's prima facie case of discrimination because it was undisputed that her furlough was an adverse employment action. However, the Court held that she was not able to point to any evidence giving rise to an inference that she was the victim of unlawful discrimination.

Fiorentini primarily relies on what she describes as better treatment of similarly situated individuals to establish a prima facie case of age discrimination. She argues that while she was furloughed, younger employees were kept on in newly created positions, a difference of treatment that she believes shows that she was furloughed in circumstances giving rise to an inference of discrimination.

When relying on the treatment of comparator employees to state a prima facie case of age discrimination, these employees must be "similarly situated." A determination of the significance of the treatment of other employees requires a "fact-intensive inquiry" conducted "on a case-by-case basis." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004). The District Court explained that although Fiorentini was the only literacy coach/reading specialist who was eventually furloughed, she was also the only

_____

a plaintiff stated a prima facie case of discrimination where he was transferred to a "dead-end position" from which he was fired a month later).

11

literacy coach/reading specialist who did not possess a Pennsylvania teaching certification or any classroom teaching experience under that certification. See App. at 13. All instructors who were retained — several of whom were older than Fiorentini — possessed this certification and had teaching experience under the certification.[6] The Court therefore found that Fiorentini could not point to the treatment of other employees to support her prima facie case.

We hold that the District Court properly evaluated Fiorentini's potential comparators in reaching its conclusion that they were not "similarly situated." The School District's newly created positions after its restructuring required the direct teaching of students — which Fiorentini was not doing under her reading specialist certification. See App. at 615-17. There is no other evidence of age discrimination in the record; Fiorentini only relies on comparator evidence. See Appellant's Br. at 23-28. Thus, the Court correctly found that Fiorentini failed to establish a prima facie case of age discrimination and summary judgment for the School District was proper.[7]

---

[6] Fiorentini argues that because the School District retained three younger teachers, she had "enough" evidence to "complet[e]" a prima facie case. Appellant's br. at 24. She also argues that the School District retained another teacher, June Tolomeo — who was a year older than Fiorentini — even though Tolomeo had less teaching experience under her Pennsylvania teaching certification than the job posting required. Id. But Fiorentini did not have a Pennsylvania teaching certificate nor any public school teaching experience. Thus, Fiorentini's unsupported argument that Tolomeo's retention is "evidence [that] the job requirements were flexible enough that [p]laintiff could hold it without a certificate" is unavailing.

[7] The District Court also extensively addressed Fiorentini's inability to show that the School District's advance of an allegedly legitimate non-discriminatory reason for her furlough was a pretext for age discrimination. The Court noted that there was no direct evidence of age discrimination and there was "no evidence that a younger teacher with

12

B.  FMLA Retaliation

To state a prima facie case for FMLA retaliation, a plaintiff must show that: (1) she invoked her FMLA rights; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's exercise of her FMLA rights. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009).  FMLA retaliation claims are analyzed under the lens of employment discrimination law and claims based on circumstantial evidence are evaluated under the burden-shifting framework of McDonnell Douglas.  Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).

Fiorentini argues that the District Court improperly granted summary judgment to the School District on her FMLA retaliation claim.  Fiorentini grounds her FMLA retaliation claim solely in her reassignment to working with the testing grades during the 2009-10 school year rather than her furlough while on FMLA leave.  Fiorentini reiterates her perspective that her reassignment constituted a demotion and was thus an adverse employment action but she does so without citing any record evidence supporting her contention.

Regardless of the other elements of her prima facie case for FMLA retaliation, we agree with the District Court that Fiorentini's reassignment did not constitute an adverse

---

the same certification and experience was saved from furlough." App. at 15.  Thus, the Court concluded that there was no evidence that the decision was "motivated by the . . . employee's age." Id. at 16.  Inasmuch as we will affirm the Court's outcome on Fiorentini's failure to establish a prima facie case of age discrimination, we need not make an analysis of her claim under the McDonnell Douglas burden-shifting framework and will end our discussion on this point here.

employment action for the reasons stated above. Without this element of her claim, Fiorentini cannot be successful on the claim. Thus, we will affirm the District Court's order granting summary judgment to the School District on her FMLA retaliation claim.

C. ADA

Finally, to state a prima facie case for disability discrimination under the ADA and the familiar McDonnell Douglas burden-shifting framework, a plaintiff must show that she: "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). To show qualifications, "a plaintiff must . . . demonstrate that s/he satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001) (internal quotation marks omitted). To establish causation in a pretext case, a plaintiff must show that consideration of a protected characteristic was a "determinative factor" in the plaintiff's adverse employment action. Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000).

The District Court found that Fiorentini was "disabled" within the meaning of the ADA but that she was not "otherwise qualified" for any positions in the School District at the time of her furlough because she did not possess a Pennsylvania teaching certification. The Court also noted that Fiorentini had not presented any evidence that disability was a "determinative factor" in her eventual furlough. Inasmuch as we already have found that Fiorentini's reassignment did not constitute an adverse employment action in our analysis of her ADEA and FMLA claims, we limit our analysis of her ADA

14

claim to the question of whether she established a prima facie case of disability

discrimination in the context of her furlough.

We agree with the District Court that the undisputed facts show that Fiorentini was

not qualified for any available positions when she was furloughed after the School

District's reorganization because she did not possess a Pennsylvania teaching

certification or have any of the requisite classroom teaching experience under such a

certification.[8] We also agree with the District Court that Fiorentini did not point to any

evidence that her disability was connected to, let alone a "determinative factor" in, the

decision to furlough her.[9] In fact, as the Court pointed out, Fiorentini's union

representative informed her at least four months before her cancer diagnosis that she was

---

[8] Fiorentini's repeated argument that she was qualified because the School District retained a teacher who had a Pennsylvania teaching certificate and some classroom teaching experience under that certificate — neither of which Fiorentini had — simply does not salvage her claim. See Appellant's Br. at 29.

[9] As the District Court noted, although there is some conflict in testimony regarding a comment Ambrose made to Fiorentini about reassigning her to work with the testing grades in the 2009-10 school year "because of her health," it appears to be undisputed that Ambrose was not involved in decision-making about the furlough over a year later, a step that was an adverse employment action. App. at 21 n.5; see Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997) (to determine the weight of an off-hand comment, a court must "evaluate factors pertaining to the declarant[,] . . . including the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action"); see also Appellee's Br. at 28-29 (arguing that any "alleged statement made by Ms. Ambrose approximately eighteen months before Ms. Fiorentini was furloughed is insufficient evidence to establish pretext given that Ms. Ambrose played absolutely no role in the decision to not select Ms. Fiorentini for any positions that became available subsequent to Ms. Fiorentini's [leave]").

at risk of being furloughed because she lacked a Pennsylvania teaching certification.[10]
See App. at 22.  Moreover, the School District began the process of reorganizing months prior to Fiorentini's cancer diagnosis.  We conclude that Fiorentini therefore failed to make out a prima facie case of disability discrimination and will affirm the Court's grant of summary judgment for the School District on her ADA claim.

## V.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's order of February 10, 2016, granting summary judgment to the School District.

---

[10]  Fiorentini argues that "because there is no record evidence explaining the criteria used to select [Fiorentini] for a furlough, a reasonable fact finder could draw an inference of discrimination thus determining that [Fiorentini's] disability was a 'determinative factor.'"  Appellant's Br. at 30.  However, the record makes clear that all employees in Fiorentini's position initially were slated to be furloughed and that the new position that the School District created into which some of those employees transitioned required qualifications that Fiorentini did not possess.  Combined with the forewarning Fiorentini received from her union representative months before her cancer diagnosis about the potential of an upcoming furlough based on the inadequacy of her qualifications, Fiorentini's argument does not allow us to draw an "inference of discrimination."

16